IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY BURNETTE,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF PHILADELPHIA,<br>COMMONWEALTH OF<br>PENNSVYLANIA DEPARTMENT OF<br>TRANSPORTATION,  and<br>SOUTHEASTERN TRANSPORTATION<br>AUTHORITY,<br>　　　　　Defendants. | CIVIL ACTION NO. 13-0288 |

Baylson, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　April 5, 2013

MEMORANDUM OF LAW RE: MOTIONS TO DISMISS

I.　　Introduction

This action arises out of injuries suffered by Plaintiff, Gary Burnette, when driving his motorcycle northbound Roosevelt Boulevard, Philadelphia, in April 2011.  As Burnette approached the intersection with Lexington Avenue, he collided with a woman attempting to traverse the twelve-lane Boulevard after dismounting a bus that had been operated by Defendant, Southeastern Pennsylvania Transportation Association ("SEPTA"). Burnette brings claims against SEPTA, the Pennsylvania Department of Transportation ("PennDOT"), and the City of Philadelphia, under 42 U.S.C. § 1983. He alleges a violation of his right to due process under the Fourteenth Amendment, on account of Defendants' creation of an unjustifiably dangerous condition on Roosevelt Boulevard. Plaintiff also brings negligence claims against Defendants under Pennsylvania law.  Defendants filed Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

1

(see ECF 8, 10 & 11), arguing that with respect to the cause of action under Section 1983, Plaintiff failed to state a claim upon which relief can be granted. For the reasons below, Defendants' motions are GRANTED and the Section 1983 claim is dismissed. Plaintiff's state law claims are remanded to state court.

## II.     Facts and Procedural History

On April 11, 2011, a SEPTA bus driver was driving a bus northbound on Roosevelt Boulevard, on the strip of roadway between Cottman Avenue and Lexington Avenue. After passing Cottman Avenue and approaching the intersection with Lexington, the driver allegedly refused to "permit its passengers to exit the bus at the Septa Bus Stop . . . which was nearest to the Designated Pedestrian Crosswalk" at Lexington Avenue, and instead forced the passengers "to exit the Septa bus at the first Bus Stop . . . thereby placing its passengers away from the Designated Crosswalk, in a poorly lit, dangerous area." (Second Amended Complaint, at 3-4) (ECF 7).  The bus stop at which the driver required the passengers to exit was south of the stop Plaintiff claims was "nearest to the Designated Pedestrian Crosswalk." (Id. at 3).  It was also, allegedly, an area "not designated for pedestrian crossing." (Id. at 4).  Plaintiff contends the bus driver had a habit of requiring passengers to exit at this first stop, rather than at the one next to a safe, pedestrian crosswalk. (Id. at 6).

A passenger, Giselle Moya, exited the bus and attempted to cross Roosevelt Boulevard. Because her crossing was outside of "the designated crosswalk," it entailed traversing twelve lanes of traffic on Roosevelt Boulevard. (Id.).  Plaintiff, Gary Burnette, was driving his motorcycle northbound on Roosevelt Boulevard at the time.  As he came around the bend towards Lexington Avenue, he was unable to detect Moya "in the middle of the northbound lanes." (Id.).  He collided with Moya and as a result, sustained physical injuries. (Id.).  Ms. Goya

2

was pregnant at the time of the accident and was killed as a result. (Pl. Response in Opp. to PennDOT's Motion to Dismiss, at 1) (ECF 12).

The Complaint includes four causes of action against the City of Philadelphia, PennDOT, and SEPTA: (1) deprivation by all Defendants of Plaintiff's civil rights under the Fourteenth Amendment, in contravention of 42 U.S.C. § 1983, on account of Defendants' not acting to mitigate a known, dangerous condition in the portion of Roosevelt Boulevard where the accident occurred, and on account of their not enacting policies and procedures regarding bus driver protocol for this strip of roadway;[1] (2) negligence, by the City of Philadelphia, in creating a dangerous condition on the roadway which it knew or should have known existed; (3) negligence, by PennDOT, for the same conduct; (4) negligence, by SEPTA, in failing to properly train its bus drivers on acceptable manners of making stops on the area of Roosevelt Boulevard involved in this accident, which should entail *not* forcing passengers to exit buses at locations "where it was known and/or foreseeable . . . that exiting Passengers were then unlawfully and unsafely encouraged . . . to attempt to cross twelve (12) lanes of highly traveled roadway . . ." (Second Amended Complaint, at 6-14) (ECF 4).

Plaintiff filed a complaint on October 17, 2012, in the Philadelphia Court of Common Pleas, against the City of Philadelphia, the Pennsylvania Department of Transportation, and SEPTA. (Notice of Removal, Ex. A) (ECF 1). On November 14, 2012, SEPTA filed preliminary objections. (Id. Ex. E). On December 21, 2012, Plaintiff filed an amended complaint in the Court of Common Pleas, adding a fourth count against all Defendants that alleged a

---

[1] Specifically, Plaintiff alleges the City of Philadelphia is liable for failing to cure a dangerous design and condition on its public roadway, despite its knowledge that the "subject roadway is riddled with prior accidents and fatalities." (Second Amended Complaint, at 7) (ECF 7). He alleges SEPTA is liable for "affirmatively creating" the danger to Plaintiff's health and safety in not enacting policies and procedures to ensure that SEPTA drivers drop off passengers in safe locations. (Id.).

violation of 42 U.S.C. § 1983.  (Id. Ex. I). SEPTA removed the case to this Court on January 17, 2013.  (ECF 1).

All three Defendants filed Motions to Dismiss on January 24, 2013, requesting that the Court dismiss Count IV of the Amended Complaint, brought under 42 U.S.C. § 1983, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (ECF 4, 5 & 6). Plaintiff filed a Second Amended Complaint on February 12, 2013, although without having obtained consent of the other parties or leave by this Court. (ECF 7).  Defendants filed new Motions to Dismiss, against requesting that the Section 1983 claim, now Count I, be dismissed. (ECF 8, 10 & 11).  Plaintiff filed Responses in Opposition (ECF 12, 13 & 15); Defendants filed Replies (ECF 14 & 16); Plaintiff filed a Sur-Reply (ECF 17), which the Court subsequently approved (ECF 21); and Defendants filed a Response to the Sur-Reply (ECF 22).

### III.     Legal Standards

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Additionally, when the facts alleged equally support an "obvious alternative explanation" for what transpired, the plaintiff will not cross the plausibility threshold. Id. at 1951-52.  "A complaint which pleads facts 'merely consistent with a defendant's liability, [] stops short of the

line between possibility and plausibility of entitlement to relief.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two part analysis. First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Second, the court should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). See generally Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (holding that in reviewing Rule 12(b)(6) motions to dismiss, the court first "review[s] the complaint to strike conclusory allegations" and then evaluates whether the "well-pleaded components of the complaint" establish "the elements of the claim").

In this matter, the Court must determine if Plaintiff's federal claim under 42 U.S.C. § 1983 is plausible. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992) (quoting 42 U.S.C. § 1983)); see also Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) ("Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."). Plaintiff contends Defendants violated his due process rights under the Fourteenth Amendment by subjecting him to a state-created danger. (Second Amended Complaint, at 7) (ECF 7).

In the Third Circuit, the "state-created danger" theory is a "viable mechanism for establishing a constitutional violation." Kneipp, 95 F.3d at 1211. The theory is a narrow exception to the general rule that the Due Process Clause does not impose "affirmative

5

obligation[s]" on state actors to "guarantee . . . certain minimal levels of safety and security." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S.189, 195 (1989). To prevail on a state-created danger claim, the following four elements must be proven:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)).

All three Defendants in this action are state or municipal entities. Under the Eleventh Amendment, suits brought by private citizens against state defendants are not cognizable in federal court, absent the state's consent. U.S. Const. amend. XI ("The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.")[2]; Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618-19 (2002) (holding that a state can waive its entitlement to sovereign immunity by consenting to suit). The Supreme Court has specifically held that the immunity provided by the Eleventh Amendment extends to cases brought under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 341-44 (1979); Alabama v. Pugh, 438 U.S. 781 (1978). The political subdivisions of a state, however, such as its municipalities or counties, do not enjoy Eleventh Amendment

---

[2] Although the Amendment speaks only to suits "by Citizens of another State," it has long been interpreted to prohibit suits brought by a state's own citizens. Hans v. Louisiana, 134 U.S. 1, 18 (1890).

6

protection. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). Nor does SEPTA, because it is neither a "state" nor an "arm of the state" under Third Circuit precedent. See Bolder v. Se. Pa. Transp. Auth., 953 F.2d 807, 818-21 (3d Cir. 1991) (en banc, Alito, J.) (concluding "SEPTA is not protected by the Eleventh Amendment" because it enjoys significant autonomy, can raise revenues on its own, and has "attributes not characteristic of an arm of the state"). Rather, for a plaintiff to prevail in a suit under Section 1983 against a municipal defendant such as the City of Philadelphia or SEPTA, he must demonstrate his injury was caused by the municipal entity's official custom or policy. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); see also Davis v. Se. Pa. Transp. Auth., 2001 WL 1632142, at *8 (E.D. Pa. Dec. 20, 2001) (holding that "SEPTA may be liable" under Section 1983 if "the Plaintiff could show that the custom or policy of SEPTA . . . le[d] to the constitutional violation").

**IV.     Analysis**

    **A.  Plaintiff's Section 1983 Claim Against PennDOT**

Without even turning to the merits, the Court dismisses Plaintiff's Section 1983 claim against PennDOT due to PennDOT's protection under the Eleventh Amendment.

The Eleventh Amendment's grant of immunity, shielding states from suit in federal court without their consent, extends not only to states qua states but also to state agencies and departments, when named as defendants in a lawsuit. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). PennDOT is unquestionably an agency of the state of Pennsylvania for the purposes of the Eleventh Amendment. Nails v. Pa. Dep't of Transp., 414 Fed. App'x 452, 455 (3d Cir. 2011) (holding "[t]he Pennsylvania Department of Transportation is a state agency" entitled to sovereign immunity); Fitzpatrick v. Pa. Dep't of Transp., 40 F.Supp.2d 631, 635 (E.D.Pa.1999) (holding "PennDOT's Eleventh Amendment immunity is

intact, and the §1983 claim is barred against PennDOT"). Given that there is no indication PennDOT has waived its immunity to suit or that the federal government has abrogated such immunity, Plaintiff's claim against PennDOT under Section 1983 is dismissed. See Draper v. Darby Twp. Police Dep't, 777 F. Supp. 2d 850, 854 (E.D. Pa. 2011) ("Congress has not abrogated the State's immunity . . . and Pennsylvania has declined to consent to suit in federal court . . . . Accordingly, plaintiff's § 1983 claim against PennDOT will be dismissed.").[3]

### B.  Plaintiff's Section 1983 Claim Against SEPTA and the City of Philadelphia

Turning to Plaintiff's claim against SEPTA and the City of Philadelphia under Section 1983, the Court concludes dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate because Plaintiff has failed to meet the plausibility threshold established in Iqbal and Twombly.

Plaintiff's 1983 action relies on the "state-created danger" theory – that is, Plaintiff contends Defendants violated his rights to due process under the Fourteenth Amendment by creating an unreasonably dangerous condition on Roosevelt Boulevard, in the area where he was injured. The first reason Plaintiff's claim is not plausible under Iqbal and Twombly is that it is imprecisely pled. The Second Amended Complaint contains such vague and confusing allegations that it is unclear which aspects of the road, bus stops, crosswalks, and driving habits of SEPTA drivers, constitute the dangerous condition about which Plaintiff is complaining. At times, Plaintiff's grievance appears to be with the placement of all SEPTA bus stops on the stretch of Roosevelt Boulevard approaching Lexington Avenue, given the curved shape of the road. (Second Amended Complaint, at 5, 9) (ECF 7) (criticizing the "improper placement" of bus stops and crosswalks in this area of the Boulevard, commonly referred to as the "Dead Man's Curve"). At other times, Plaintiff's grievance appears to be with the placement of only the

---

[3] Under Lapides, a state will be deemed to have waived its Eleventh Amendment immunity when it voluntarily removes a case to federal court. Lapides, 535 U.S. at 619-623. Here, it was SEPTA, rather than PennDOT, that initially removed the suit from Pennsylvania court to this Court. (ECF 1).

8

*second* SEPTA bus stop near Lexington Avenue, because the second stop, at which Ms. Goya dismounted, was not next to a pedestrian crosswalk. (Id. at 4) (contending the second bus stop was "away from the Designated Crosswalk, in a poorly lit, dangerous area" of the roadway). At other times, Plaintiff's grievance appears to be with the habit of SEPTA drivers of "refusing to stop at both" stops, and of "forcing passengers to exit the Septa bus at the first Pedestrian Crosswalk." (Id. at 6). Given the inexact and blurred drafting of the Second Amended Complaint, the Court finds it difficult to discern the specific conditions about which Plaintiff is protesting.

Second and more important, Plaintiff fails to state a plausible claim under Section 1983 because even assuming every factual averment in the Second Amended Complaint is true, Plaintiff still would fail to demonstrate a "state-created danger" as a matter of law. In Bright v. Westmoreland County, the Third Circuit established that for a plaintiff to prevail in a state-created danger claim, he must prove four elements: (1) the harm was foreseeable and direct; (2) the state official acted in a manner that shocks the conscience; (3) the relationship between the plaintiff and the state was such that the plaintiff was a foreseeable victim of the defendant's acts, or was a member of a discrete class of persons subjected to potential harm by the defendant's acts; and (4) there was affirmative conduct by the state actor. 443 F.3d at 281. Focusing solely on the second and third requirements for the sake of expediency, the Court concludes neither is met.

The second requirement under the state-created danger doctrine is that the "state actor [must have] acted with willful disregard or deliberate indifference to plaintiff's safety." Morse v. Lower Merion Sch. Dist., 132 F. 3d 902, 910 (3d Cir. 1997). "In other words, the state's actions must evince a willingness to ignore a foreseeable danger or risk." Id.; see also Brooks v. City of

9

Phila., 747 F. Supp. 2d 477, 485 (E.D. Pa. 2010) (holding that a "state actor must have acted with a degree of culpability that shocks the conscience"). Plaintiff fails to meet this requirement here, because he alleges no facts, nor could he, showing that SEPTA or the City of Philadelphia deliberately ignored a foreseeable risk relating to the operation of buses on Roosevelt Boulevard. While Plaintiff contends "the subject roadway is riddled with prior accidents and fatalities which the City knew of and ignored," (Second Amended Complaint at 7) (ECF 7), he does not point to any prior accidents involving SEPTA buses, passengers, or dismounting passengers, in that vicinity. His pleading offers no grounds for finding Defendants were aware of dangers associated with the operation of SEPTA buses or with the use of SEPTA bus stops in the strip of the Boulevard at issue. A fact-finder could not conclude based on these averments that Defendants acted with the degree of deliberate indifference required by the state-created danger doctrine. See Allen v. Susquehanna Twp. Sch. Dist., 233 Fed. App'x 149, 153 (3d Cir. 2007) ("Because there is no record evidence that Jacquan required monitoring and no record evidence that Jacquan had a propensity to wander away, it follows that the STSD could not have ignored a known risk or danger to Jacquan by failing to provide him an escort."); Davis v. City of Phila., 2011 WL 4499288, at *6 (E.D. Pa. Sept. 29, 2011) ("The plaintiff has offered no evidence to show that the City employees were aware of a great risk of serious harm in issuing permits or installing ferrules . . . . No past injuries or deaths put the Water Department on notice that it was contributing to hazardous conditions."); Brooks, 747 F. Supp. 2d at 485 ("[P]laintiffs have failed to present any evidence . . . . that the school or anyone else was aware of prior incidents or the potential for the type of incident that occurred on May 3, 2007.").

The third requirement of a state-created danger claim is that there exists a special relationship between the state and the plaintiff, such that the plaintiff is "a foreseeable victim of

[the state's] acts in a tort sense." Kneipp, 95 F.3d at 1209 n. 22. The plaintiff can be either "a specific individual [] placed in danger" or "a member of a discrete class of persons subjected to the potential harm brought about by the state's actions," but his dealings with the state must somehow distinguish him from a member of the general public. Morse, 132 F.3d at 913; see also Kneipp, 95 F.3d. at 1208 (holding that a "policy directed at the public in general," such as a "borough's 'failure to . . . ensure that applicants to the fire department were screened sufficiently for tendencies towards arson,'" is not a state-created danger theory because no special relationship is involved).

Plaintiff fails to meet the special relationship requirement because the Second Amended Complaint makes no demonstration that Plaintiff was in a discrete class of persons subject to foreseeable harm as a result of SEPTA or the City of Philadelphia's acts. Courts in this District have concluded that SEPTA passengers do *not* constitute a "discrete class" of potential plaintiffs under the state-created danger doctrine, by virtue of being in a "customer and servicer" relationship with SEPTA. Martinez v. Se. Pa. Transp. Auth., 2009 WL 5101824, at *5 (E.D. Pa. Dec. 15, 2009) ("Plaintiff has not established a relationship 'even remotely similar to such individualized relationships involving personal contact in close temporal proximity to the injury suffered.'") (internal citation omitted). Moreover, Plaintiff was not even a SEPTA passenger – he was an every-day user of Roosevelt Boulevard. There are no allegations in the Second Amended Complaint supporting the conclusion that Plaintiff was in a special relationship with the state, or its municipalities or agencies, such that he was rendered a "foreseeable victim" by Defendants' acts. See Martorano v. City of Phila., 2009 WL 3353089, at *3 (E.D. Pa. Oct. 14, 2009) (dismissing a Section 1983 suit against Philadelphia for allowing "joy-riding" in FDR park because the plaintiff, a passenger in a car on FDR park, failed "to even allege that there is a

11

relationship between she and the state that takes her out of the general public or makes her a foreseeable victim"); Solum v. Yerusalmin, 1999 WL 395720, at *5 (E.D. Pa. 1999) (dismissing a Section 1983 claim premised on a borough's failure to maintain a road in safe condition, because "'drivers on Route 1' involves the general population [and] not a discrete class" of persons).[4]

### C. Plaintiff's State Law Claims

The Court declines to exercise supplemental jurisdiction over Plaintiff's negligence claims, vis-à-vis all Defendants, given that there are no remaining federal causes of action in this lawsuit. See 28 U.S.C. § 1367 (c) (3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."); see also Darby, 777 F. Supp. 2d at 854 ("[B]ecause plaintiff's federal claim against PennDOT is barred, the court declines to exercise supplemental jurisdiction over any state law claims that plaintiff may have against PennDOT."). The Court remands the negligence claims to state court, where this suit was initially filed.

### V. Conclusion

For the reasons stated, Defendants' Motions to Dismiss (ECF 8, 10 &11) are GRANTED insofar as Count I of the Second Amended Complaint (ECF 7), alleging a cause of action under 42 U.S.C. § 1983, is DISMISSED.  Plaintiff's remaining claims arising under state law, set forth

---

[4] In cases where courts in this Circuit or District *have* found the special relationship element to be satisfied, the connection between the plaintiff and the state actor was more immediate and specific than that here. See Ye v. United States, 484 F.3d 634 (3d Cir. 2007) (plaintiff was a patient of a doctor at a state-run medical clinic); Kneipp, 95 F.3d at 1209 (plaintiff was temporarily considered to be in police custody when officers found her inebriated, instructed her husband to go home, and the husband reasonably assumed officers would escort her); C.J.S. v. Bd. of Directors of City Trusts, 2011 WL 3629171, at *5 (E.D. Pa. Aug. 17, 2011) (boarding school students under supervision of school employee).

in Counts II, III and IV of the Second Amended Complaint, are remanded to the Philadelphia Court of Common Pleas.  An appropriate Order follows.

O:\CIVIL 13\13-288 Burnette v. City of Phila\13cv288.Memo re Mot to Dismiss.docx.

13